UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

CASE NO.: 6:24-cv-00172

TESLA, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.

_____/

**PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND ORDER RESTRAINING TRANSFER OF ASSETS**

Plaintiff, Tesla, Inc. ("Tesla"), by undersigned counsel and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C § 1651(a), respectfully moves on an *ex parte* basis for entry of a temporary restraining order, an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" to the Complaint (collectively, the "Defendants"). In support thereof, Plaintiff respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of one or more of Plaintiff's trademarks at issue within this district and throughout the United

States by operating e-commerce stores established via third-party marketplace websites and/or commercial Internet websites operating under their seller identification names and website domains identified on Schedule "A" to the Complaint (the "Seller IDs"). Specifically, Plaintiff has obtained evidence clearly demonstrating the following: (1) Defendants are engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's branded goods; and (2) Defendants accomplish their sales of counterfeit and infringing goods via the Internet through the use of, at least, the Defendants' domain registrations and/or e-commerce stores operated via the Internet marketplace websites. Based on this evidence, Plaintiff's Complaint alleges claims for false designation of origin, common law unfair competition, and common law trademark infringement.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its right to determine the manner in which its trademarks are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Plaintiff's reputation and goodwill and the commercial value of Plaintiff's trademarks. By their activities, Defendants are defrauding Plaintiff and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Plaintiff's trademarks.

Moreover, Defendants use money transfer and/or retention/processing services with PayPal, Inc. ("PayPal"), or have their payments processed on their behalf using an aggregate escrow account as a method to receive monies generated through the sale of counterfeit and

infringing goods.[1]  *See* accompanying Declaration of A. Robert Weaver in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Weaver Decl.") at ¶ 3.

In light of the inherently deceptive nature of the counterfeiting business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained.  The Lanham Act allows Plaintiff to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods.  *See* 15 U.S.C. § 1117(a).  To preserve that disgorgement remedy, Plaintiff seeks an *ex parte* order restraining Defendants' assets including specifically funds transmitted through all possible online marketplace payment providers, including but not limited to Alipay, Ebay, Wish.com, PayPal, DHgate.com, and Amazon platforms (collectively, the "Financial Entities").

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Intellectual Property Rights

Plaintiff is the owner of the federally registered trademarks identified in Schedule B (the "Tesla Marks") attached to the Declaration of Lou Dorny ("Dorny Decl."), filed herewith.  The Tesla Marks are used in connection with the design, marketing, and distribution of various high-quality goods and merchandise relating to electric vehicles, vehicle accessories, stationary battery energy storage devices, solar panels, solar shingles, and related products and services.  *See* Dorny Decl. at ¶ 7.  The Tesla Marks are a symbol of Plaintiff's quality, reputation, and goodwill and the Tesla Marks have never been abandoned.  *Id*. at ¶¶ 5-10.  Moreover, Plaintiff

---

[1] These escrow accounts are held in the name of various financial institutions, including but not limited to AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao.  Weaver Decl. at ¶ 3.

have expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademark. *Id.* at ¶¶ 6-7.

Plaintiff has extensively used, advertised, and promoted the Tesla Marks in the United States, and has carefully monitored and policed the use of the Tesla Marks. Dorny Decl. ¶¶ 6-10. As a result of Plaintiff's efforts, the Tesla Marks have acquired fame in the consumer market. *Id*. The Tesla Marks are a widely recognized trademark in the United States, and the trademark has achieved secondary meaning. *Id*. The Tesla Marks have come to symbolize the enormous goodwill of Plaintiff's products throughout the United States. *Id*.

**B.     Defendants Wrongfully Use Plaintiff's Trademarks.**

Defendants do not have, nor have they ever had, the right or authority to use the Tesla Marks for any purpose. *See* Dorny Decl. at ¶ 11. Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods using counterfeit and infringing trademarks without authorization ("Defendants' Goods"). *Id.*; *see also* Weaver Decl. at ¶ 4 (attaching relevant web page captures from Defendants' Internet based e-commerce stores operating under the Seller IDs).

Given Defendants' blatant copying of the Tesla Marks, Defendants' Goods are indistinguishable to consumers, both at the point of sale and post-sale. By using the Tesla Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores and websites, and Plaintiff. Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Plaintiff irreparable harm and damage.

As part of its ongoing investigation regarding the sale of counterfeit and infringing

products, Plaintiff accessed Defendants' Internet based e-commerce stores operating under each of the Seller IDs, initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of the Tesla Marks, and requested each product to be shipped to an address in the Western District of Texas. *See* Dorny Decl. at ¶ 13.

Plaintiff, who is able to identify distinctions between Plaintiff's genuine and authorized merchandise and counterfeit copies of the same, reviewed and visually inspected the items offered for sale via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Tesla Marks, and determined the products were not genuine versions of Plaintiff's products. *See* Dorny Decl. at ¶¶ 11-14.

A comparison of the Tesla Marks to the marks and images used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the counterfeit and infringing nature of Defendants' Goods. *See* Defendants' Goods (Dorny Decl., Exhibit 1). Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States. Weaver Decl. at ¶ 5. Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them. Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Plaintiff. Ultimately, Defendants' Internet activities infringe on Plaintiff's rights. The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff. Weaver Decl. at ¶ 6.

## III. ARGUMENT

### A. An *Ex Parte* Temporary Restraining Order is Essential to Prevent Immediate Injury.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing and/or using counterfeits and infringements of the Tesla Marks via their e-commerce stores and websites using at least the Seller IDs. Specifically, Defendants are wrongfully using counterfeits and infringements of the Tesla Marks to increase consumer traffic to their illegal operations. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Plaintiff. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Tesla Marks and preserve the status quo until such time as a hearing can be held. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the e-commerce stores at issue are under Defendants' complete control. Thus, Defendants have the ability to change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names,

and transfer assets and ownership rights to the Seller IDs. *See* Weaver Decl. at ¶ 7. Such modifications can happen in a short span of time after Defendants are provided with notice of this action. *Id.* Thus, Defendants can easily electronically transfer and conceal the funds sought to be restrained if they obtain advance notice of Plaintiff's Motion for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and eviscerate the status quo. *Id.* As Defendants engage in illegal trademark counterfeiting and infringing activities, Plaintiff have no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark laws.

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. *See, e.g., Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Accordingly, this Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores and websites or modifying or deleting any related content or data. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.     Temporary Restraining Order and Preliminary Injunction Standard**

In this Circuit, the standard for obtaining a temporary restraining order, like a preliminary injunction, requires establishing four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary

restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest. *See Whole Woman's Health v. Paxton*, 264 F.Supp.3d 813, 818 (W.D. Tex. 2017) (*citing Jackson Women's Health Org. v. Currier*, 760 F.3d 338, 452 (5th Cir. 2014)). Plaintiff's evidence establishes all the foregoing and relevant factors.

    **C.**    **Likelihood of Success on the Merits**

        **1.**    **Plaintiff's counterfeit and trademark infringement claim under Section 32 of the Lanham Act (Count I of the Complaint)**

Section 32 of the Lanham Act provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To recover on a claim of trademark infringement, a plaintiff must show "that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Plaintiff's evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1114.

Plaintiff's ownership and exclusive use of the Tesla Marks is presumed through their registration on the Principal Register of the United States Patent and Trademark Office. *See* Schedule B to Dorny Decl.; *Elvis Presley Enters. v. Capece,* 141 F.3d 188, 194 (5th Cir. 2008). Plaintiff has been using the Tesla Marks well prior to the promotion and sale of Defendants' Goods in the U.S. *See* Dorny Decl. at ¶ 11. Moreover, Defendants have never had the right or authority to use the Tesla Marks. *Id.*

With respect to likelihood of confusion, the Fifth Circuit considers the following "digits of confusion:" (1) the type of mark infringed; (2) the similarity between the marks; (3) the similarity of the products; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Company*, 982 F.3d 280, 289 (5th Cir. 2020). Although the "bad intent" and "actual confusion" digits possess particular prominence, a finding of likelihood of confusion need not be supported by a majority of the digits and district courts may weigh those digits differently from case to case, depending on the particular facts and circumstances. *Id*.

### a. Type and Strength of the Marks

The strength of a trademark is determined by two factors: the conceptual strength of the mark "spectrum," from "generic and descriptive" on one end to "arbitrary and fanciful" on the other; and (2) "the standing of the mark in the marketplace." *Am. Rice*, 518 F.3d at 330. "Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *Bd. of Supervisors for La. State Agric. & Mech. College v. Smack Apparel*, 550 F.3d 465, 479 (2008). Here, the asserted Tesla Marks are undisputedly strong, arbitrary, and fanciful marks.

The Tesla Marks have also acquired secondary meaning. Plaintiff has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Tesla Marks. *See* Dorny Decl. at ¶¶ 5-10, 16. The Tesla Marks enjoy widespread recognition and is prominent in the minds of consumers. *Id.*

### b. Similarity of the marks

Here, Defendants are using marks that are identical or nearly identical to the Tesla Marks. *See* Weaver Decl. at ¶ 4. Where the marks are so identical they are counterfeit under 15 U.S.C. § 1127, it would not be error to find this factor alone dispositive. *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (district court did not err in failing to perform digits of confusion test where defendants used exact marks). At a minimum, this digit weighs strongly in favor of Plaintiff.

### c. Similarity of the goods

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F.Supp.2d 622, 638 (N.D. Tex. 2009). Defendants are selling the same types of goods Plaintiff sells. *See* Dorny Decl. at ¶¶ 11-14; *see* evidence of Defendants' Goods attached as Exhibit 1 to the Dorny Decl. Because Defendants' Goods bear counterfeits of the Tesla Marks, Defendants' Goods appear virtually identical to Plaintiff's genuine products in the consumer market.

### d. Identity of the Retail Outlets and Purchasers

Dissimilarities between the retail outlets or the parties' customer bases can lessen the likelihood of confusion. *Dallas Cowboys*, 616 F.Supp.2d at 639. Both Plaintiff and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. *See* Dorny Decl. at ¶¶ 6-8; Weaver Decl. at ¶ 5. Thus, the conditions of purchase for both parties are unmistakably identical. Moreover, both target the same general U.S. consumers, and as such, Plaintiff is directly competing with Defendants' products.

### e. Defendants' intent

If a plaintiff can show that "a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity." *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980). In view of the substantial similarities between The Tesla Marks and Defendants' Goods, there is no doubt that Defendants intentionally set out to copy The Tesla Marks in a manner that is likely to generate confusion on the part of potential consumers.

### f. Evidence of actual confusion

Actual confusion is not a prerequisite to establishing a likelihood of confusion. *Elvis Presley Enters.*, 141 F.3d at 203. In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell, and selling counterfeit goods identical in appearance to those sold by Plaintiff. *See* Dorny Decl. at ¶¶ 11-14, Exhibit 1. Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Tesla Marks which undeniably creates the impression they are viewing genuine goods sold or authorized by Plaintiff. Such post-sale confusion is entirely actionable. *See Paulsson Geophysical Services, Inc. v. Sigmar*, 2007 WL 9702439, at *3 (W.D. Tex. Feb. 23, 2007) (court need to engage in analysis of each digit of confusion where defendants employ exact marks, and evidence of actual confusion not necessary).

### g. Degree of Care Exercised by Potential Purchasers

"Where items are relatively inexpensive, a buyer may take less case in selecting the item, thereby increasing the risk of confusion." *Smack Apparel*, 550 F.3d at 483. Here Defendants web pages make clear that Defendants' sold goods are relatively inexpensive, and most certainly are not the type of professional and institutional goods costing thousands of dollars that would weigh this factor against confusion. *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986).

In sum, all eight factors therefore weigh in Plaintiff's favor and therefore support a likelihood of success on the merits of Plaintiff's counterfeit and trademark infringement claim.

### 2. Plaintiff's false designation of origin claim under Section 43 of the Lanham Act (Count II of the Complaint)

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc.*, 505 U.S. at 780. Notwithstanding whether the violation is identified as an infringement, unfair competition, or false designation of origin, the determinative factor is a likelihood of consumer confusion. *Id*. Therefore, because Plaintiff has established the merits of their trademark counterfeiting and infringement claim against Defendants, a likelihood of success on the merits is also shown for Plaintiff's false designation of origin claim.

### 3. Plaintiff's common law unfair competition and common law trademark infringement claims (Counts III and IV of the Complaint)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of

federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Additionally, the analysis of liability for State common law trademark infringement is the same as the analysis of liability for trademark infringement under Section 32(a) of the Lanham Act. *Viacom International v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018). As discussed above, Plaintiff has satisfied the elements of its trademark counterfeiting and infringement claim against Defendants, establishing that a likelihood of confusion exists herein. Accordingly, Plaintiff is also likely to succeed on the merits of their common law unfair competition and trademark infringement claim.

**D.     Plaintiff is Suffering Irreparable Injury.**

In December 2020, the Trademark Modernization Act codified a presumption of irreparable harm if Plaintiff demonstrated a likelihood of success in pursuing a temporary restraining order. 15 U.S.C. § 1116(a).[2] In copyright cases, harm might be "irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010); *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming over Internet of copyrighted TV programming). Because a likelihood of confusion exists, at this stage of the proceedings irreparable harm is presumed.

**E.     The Balance of Hardship Tips Sharply in Plaintiff's Favor.**

Plaintiff has expended substantial time, money, and other resources to develop the

---

[2] Instances where courts deny temporary restraining orders or preliminary injunctions are often for failure to demonstrate irreparable harm. Much of the case law was decided prior to the Trademark Modernization Act, or failed to consider it in its analysis. Even without this presumption, Plaintiff respectfully submits it has met its burden. "A finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes establishment of the dollar value of the loss…especially difficult." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n. 1 (5th Cir. 1989).

quality, reputation, and goodwill associated with the Tesla Marks. *See* Dorny Decl. at ¶¶ 6-10. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will suffer losses and damage to his reputation. *Id.* at ¶ 18; *see also WPIX*, 765 F. Supp. 2d at 603 ("[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product."). Defendants will therefore suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their present counterfeiting and infringement activities.

### F. The Relief Sought Serves the Public Interest.

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Plaintiff's genuine goods. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F.Supp.3d 473, 497 (E.D. Tex. 2020).

Further, the public interest is protected by issuing an injunction because Plaintiff loses valuable incentives to continue to create programming and related merchandise if it continues to be deprived of (1) control over its content, (2) how and where the content gets distributed, and (3) potential revenue sources. Protecting Plaintiff's intellectual property rights is consistent with, if not equivalent to, promoting the public interest. *See Salinger*, 607 F.3d at 82; *WPIX*, 765 F. Supp. 2d at 621.

### G. The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### 1. Entry of an order immediately enjoining Defendants' unauthorized and unlawful use of Plaintiff's trademarks is appropriate.

Plaintiff requests an order requiring Defendants immediately cease all use of the Tesla Marks, or substantially similar marks, including on or in connection with all e-commerce stores, domain names, and websites owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Plaintiff's trademarks, goodwill, and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Tesla Marks. Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property rights. Other courts within this Circuit have granted relief in similar cases involving the unauthorized use of intellectual property rights. *PAAKline, LLC v. Dongguan Airuise Trading Co., Ltd.*, No. 1:22-cv-1082-LY, 2022 WL 18110060 (W.D. Tex. Nov. 29, 2022); *BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co.*, 1:22-cv-278-RP, 2022 WL 5568332 (W.D. Tex. Apr. 21, 2022); *Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A*, No. H-12-2085, 2012 WL 3527047 (S.D. Tex. Aug. 14, 2012).

### 2. Entry of an order prohibiting transfer of the Seller IDs during the pendency of this action is appropriate.

To preserve the status quo, Plaintiff seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties. Once they become aware of litigation against them, Defendants operating via the Internet can easily, and often will, change the ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. *See* Weaver Decl. at ¶ 7. Here, an

interim order prohibiting Defendants from transferring their e-commerce stores and domain names operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief. Courts have granted this precise relief in this district and similar relief in actions where the relied upon instrumentalities of infringement and contact are e-commerce stores, domain names, and associated websites. *See supra* at n. 2.

### 3. An *ex parte* order restraining transfer of assets is appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that he will likely succeed on the merits of his claims. As such, under the Lanham Act, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117. Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by the Financial Entities, or other financial institutions for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto. *See Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed.Appx. 707 (5th Cir. 2007) (affirming district court's asset seizure as an equitable remedy in counterfeit enforcement action); *see also Prep Solutions, Ltd. v. Leicht*, 2022 WL 1812298, at *2 (E.D. Tex. June 2, 2022) ("The Court can permissibly freeze assets to protect a plaintiff's equitable remedies – such as the equitable remedy of disgorgement, which is expressly authorized by the Copyright Act"). Indeed, almost every Circuit Court has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets

*pendente lite. See Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95-cv-9341, 1997 WL 223077, at *7 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets pendente lite under some set of circumstances").

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte. See F.T. Int'l Ltd v. Mason*, No. 00-cv-5004, 2000 WL 1514881, at n. 1 (E.D. Pa. Oct. 11, 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, No. 99-cv-7249, 2000 WL 715601 (N.D. Ill. June 2, 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

Other courts have likewise granted the relief requested herein. For example, in *Reebok v. Marnatech* the district court granted plaintiff a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. *Reebok Int'l Ltd.*, 737 F. Supp. at 1526. Affirming the district court's order, the Ninth Circuit determined that the plaintiff met his burden of demonstrating that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. *Reebok Int'l Ltd.*, 970 F.2d 552, 563 (9th Cir. 1992). The Ninth Circuit further held as follows: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Id.* at 559; *see also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has

17

the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies"); *Kemp v. Peterson*, 940 F.2d 110, 113-114 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has an additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Plaintiff's knowledge.

### H. Expedited Discovery is Appropriate

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Plaintiff respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful counterfeiting operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff's undersigned counsel is aware that the third-party marketplaces and payment

services contemplated in the proposed order have cooperated with trademark owners in prior cases under similar circumstances and are accustomed to doing so as party of their business operations. These third parties can comply with these expedited discovery requests without undue burden.

I.   A Bond Should Secure the Injunction.

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court require them to post a bond of no more than ten thousand dollars ($10,000.00), ***subject to increase at the Court's discretion should an application be made in the interest of justice***. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

IV.   CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiff respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at [rweaver@brickellip.com](mailto:rweaver@brickellip.com) so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

Date:   April 11, 2024                                    Respectfully submitted by,

                                                          THE BRICKELL IP GROUP, PLLC
                                                          1101 Brickell Avenue
                                                          South Tower, Suite 800
                                                          Miami FL, 33131

Tel: 305-728-8831
Fax: 305-428-2450

*/s/ A. Robert Weaver*
A. Robert Weaver
Fla. Bar No. 92132
Email: rweaver@brickellip.com

*Counsel for Plaintiff*