**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| TESLA, INC., <br><br> Plaintiff, <br> v. <br><br> THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants, | Case No. W-24-cv-00172-ADA <br><br> **DEFENDANT SLOW SLOG'S RESPONSE IN OPPOSITION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> Judge: Alan D Albright |

## I.      INTRODUCTION

Defendant Slow Slog (hereinafter "**Defendant**") respectfully submits this response in opposition to Sealed Order Granting Ex Parte Application for Entry of Temporary Restraining Order (hereinafter "**TRO**") (*Dkt. 9*) and Preliminary Injunction which is going to be heard before Honorable Alan D Albright on May 17, 2024.

The TRO should be vacated, and the preliminary Injunction should be denied as to Defendant for the following reasons: (1) Plaintiff has not demonstrated a likelihood of success on the merits; (2) Plaintiff has not shown that it is likely to suffer irreparable harm; and (3) the balance of equities and public interest favor not granting the TRO and the preliminary injunction.

-1-

## II.     LEGAL STANDARD

"Parties seeking a temporary restraining order must establish the same four elements as parties seeking a preliminary injunction." *Star v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 19-CV-053-DC, 2021 WL 2908668, at 1 (W.D. Tex. Apr. 12, 2021) "To obtain a temporary restraining order or a preliminary injunction, the moving party must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the substantial injury outweighs the threatened harm to the nonmovants, and (4) granting the injunction will not disserve the public interest." *Id*. (citing *Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012))

To show a likelihood of success on the merits on a trademark case, "[p]laintiff must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Plaintiff's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' goods." *BVE Brands, LLC v. Yiwu Dingyi E-Com. Co.*, No. 1:22-CV-278-RP, 2022 WL 5568332, at 2 (W.D. Tex. Apr. 21, 2022) In this Circuit, "[t]o determine likelihood of success on a trademark-infringement claim, courts consider (1) the type of mark infringed, (2) the similarity between the marks, (3) the similarity of the products, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) evidence of actual confusion, and (8) the degree of care exercised by potential purchasers." *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020) These eight elements are together labeled as "digits of confusion." *Id*. (citing *Viacom Int'l v. IJR Cap. Invests., L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018))

## III. ARGUMENTS

**1. The Plaintiff failed to demonstrate a likelihood of success on the merits.**

While Defendant contains no disagreement to the Plaintiff's ownership on its trademarks, Defendant respectfully disagrees that its use of Plaintiff's mark would cause any confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' goods. The goods sold by Defendant were trash cans designed specifically for Tesla Model 3 automobiles. See *Dkt. 4-10*, at 34. In fact, under the description for these goods, it was clearly explained that the product was "[a] trash can specially designed for the main driver of Tesla Model 3, suitable for tesla model 3 models. The profile of tesla model 3 trash can fits well into the left door, keeping it from shaking when the car is moving." *Id*. Disregarding the grammar mistakes, an ordinary online purchaser should be able to get the message from this description that the goods being sold here are designed for Tesla Model 3 automobiles, instead of produced by the Plaintiff.

Applying the "digits of confusion" test here, most digits won't be satisfied. Moreover, among the eight digits, "[t]wo of those digits possess particular prominence: The sixth—bad intent—is 'not necessary' but 'may alone be sufficient to justify an inference that there is a likelihood of confusion.' Likewise, the seventh—actual confusion—constitutes the 'best evidence of a likelihood of confusion.'" *Future Proof Brands, L.L.C.*, at 289. (citing *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017) and *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 197 (5th Cir. 2018)) Here in this case, Defendant's intention was only to sell accessories designed for Tesla automobiles, and it was inevitable for Defendant to mention the Plaintiff's mark during its normal course of business, and thus no bad intend can

be attributed to the Defendant. Also, as the Plaintiff provided no evidence on actual confusion, this digit was not met.

In the TRO, the court finds that "[t]he Tesla Marks are arbitrary and fanciful, and should be afforded strong protection[.]" See *Dkt. 9*, at 8. Defendant respectfully echo the court's view. However, regardless how strong the degree of protection should be, it doesn't deprive the others from fair descriptive use of the marks. "To make out the statutory fair use defense under *15 U.S.C. § 1115(b)(4)*, [Defendant] must show that it made use of the mark "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Luckenbach Texas, Inc. v. Engel*, No. A-19-CV-00567-DH, 2022 WL 855859, at 2 (W.D. Tex. Mar. 16, 2022) (citing *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000) and *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980)) As it has already been discussed in last paragraph, here, Defendant was not using the mark as a trademark. Instead, it was using it to describe its own products in good faith. And therefore, Defendant shall be found in fair descriptive use of the Plaintiff's marks.

In general, because Defendant was using the marks fairly in a descriptive manner, and because the evidence submitted by the Plaintiff does not meet the standards set by the "digits of confusion" test, the Plaintiff failed to demonstrate a likelihood of success on the merits.

2. **Plaintiff has not provided it is likely to suffer irreparable harm absent the TRO or preliminary injunction.**

The Plaintiff argued that "[b]ecause of likelihood of confusion exists, at this stage of the proceedings irreparable harm is presumed" according to the Trademark Modernization Act. See

*Dkt. 4*, at 13. However, when Plaintiff was establishing the existence of likelihood of confusion for its Count II, it discussed the legal requirements of the common law of Florida. While we don't see the relevance of the common law of Florida under this jurisdiction, we disagree with the Plaintiff's conclusion that the likelihood of confusion was established. *Id*.

The Plaintiff also discussed the "digits of confusion" test to prove the likelihood of confusion. However, Plaintiff's general assertions on all defendants named in Schedule "A" do not match the reality of Defendant at all. When analyzing the similarity of the goods, Plaintiff stated that "[d]efendants are selling the same type of goods Plaintiff sells." *Id.*, at 10. In fact, Defendant sells trash cans, which differ significantly from what the Plaintiff sells. Another example appeared in the part "identity of the retail outlets and purchasers," Plaintiff stated that "[b]oth Plaintiff and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida." *Id.* While, again, seeing no relevance of Florida, the only common marketing channel, the internet, obviously cannot establish the likelihood of confusion under "digit of confusion" test as internet is such a large marketplace which basically all kinds of goods are being sold on it.

For the reason stated above, the Plaintiff failed to prove that it is likely to suffer irreparable harm for the issuance of TRO and preliminary injunction.

3. **The equities and public interest weigh in favor of not granting the preliminary injunction.**

"[C]ourts must balance the competing claims of injury and must consider the effect on each

party of the granting or withholding of the requested relief." *Winter, 555 U.S. at 24 (quoted citation omitted).*

Here in this case, Plaintiff won't be suffering any harm from the absence of TRO or a preliminary injunction. As discussed in the first and second argument, Defendant sells trash cans, which are not competing products of what Plaintiff's currently selling, and thus, won't cause either monetary damage or reputation damage on Plaintiff.

On the contrary, Defendant's possibility of suffering injury is way higher than Plaintiff by the issuance of preliminary injunction. Since the issuance of the TRO, Defendant's fund has been restrained, causing challenges to its cash flow. The cash flow problem has forced Defendant to shrink its business size because it was in fear of capital chain rupture. In fact, if this situation persists for an extended period of time, Defendant would be exposed to the risk of business failure. Comparing to Plaintiff's situation, the balance of the equities clearly tips in not entering a preliminary injunction against Defendant and vacate the TRO.

No public interest will be served by entering a preliminary injunction. As Plaintiff didn't prove the existence of counterfeiting products, the public will suffer no harm of confusion.

## IV.    CONCLUSION

In conclusion, the TRO shall be vacated, and preliminary Injunction shall be denied as to Slow Slog for the reasons that (1) the Plaintiff failed to establish a prima facie case for trademark infringement; (2) the Plaintiff failed to prove the existence of irreparable harm without the TRO and preliminary injunction; and (3) the balance of the equities and public interest clearly tips in favor of Defendant.

Date: May 13, 2024

                                              Respectfully submitted
By: /s/ Huicheng Zhou
Huicheng Zhou Esq.
(Pro hac vice)

California State Bar No. 350005
25 S Raymond Ave, Suite 300
Alhambra, CA 91801
huichengzhou.attorney@gmail.com
Tel: (626) 724-4819
Fax: N/A
Attorney for defendant Slow Slog

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff and all CM/ECF participants.

Date: May 13, 2024

    Respectfully submitted
    By: /s/ Huicheng Zhou
    Huicheng Zhou Esq.
    (Pro hac vice)

    California State Bar No. 350005
    25 S Raymond Ave, Suite 300
    Alhambra, CA 91801
    huichengzhou.attorney@gmail.com
    Tel: (626) 724-4819
    Fax: N/A
    Attorney for defendant Slow Slog